# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LINKS, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>　　　　　　　　　Defendant. | Case No.: 3:17-cv-00996-H-KSC<br><br>**ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**<br><br>**[Doc. No. 33]** |

On April 26, 2018, Plaintiffs Barry Links, Christopher Sovay, Steve Vandewalle, Andrea Dominguez, Timothy Olson, and Brian Sanford (collectively, "Plaintiffs") and Defendant City of San Diego ("Defendant" or "the City") filed a joint motion for approval of a settlement agreement. (Doc. No. 33.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines that the motion is fit for resolution without oral argument, submits the motion on the papers, and vacates the hearing set for June 4, 2018. For the reasons discussed below, the Court **GRANTS** the motion for approval of the settlement.

# BACKGROUND

Plaintiffs Barry Links, Christopher Sovay, Steve Vandewalle, Andrea Dominguez, Timothy Olson, and Brian Sanford, on behalf of themselves and others similarly situated, allege that Defendant City of San Diego violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages.[1] (Doc. No. 7.) Each Plaintiff is employed by the City's Fire-Rescue Department as a Helicopter Rescue Medic ("HRM"), providing support services for helicopters designated as air ambulances. (Id. ¶¶ 15-16.) HRMs spend their flights administering medical care or waiting to administer medical care. (Id. ¶ 17.) Infrequently, the helicopters designated as air ambulances may be used to drop water on brush fires or to map out brush fires. (Id. ¶ 19.) On those occasions, an HRM may load a hose and fittings onto the helicopter, or may fill the helicopter with water and fuel if the HRM is present at a designated area close to a water source, known as a "helispot." (Id. ¶ 20.) On such occasions, however, an HRM does not ride in the helicopter when it drops water on the fire. (Id. ¶ 21.) In their duties as HRMs, Plaintiffs were not responsible for fire suppression. (Id. ¶ 30.)

Within the three years immediately preceding commencement of this action, Plaintiffs were assigned to work 24-hour shifts as HRMs. (Id. ¶ 25.) Indeed, as part of their regular work schedule, Plaintiffs worked an average 56-hour workweek, consisting of nine 24-hour shifts in a 28-day period. (Id. ¶ 26.) Plaintiffs have worked more than 40 hours in a workweek at all times relevant to this action. (Id. ¶ 29.) It is alleged, however, that until January 2017, the City failed to provide Plaintiffs with overtime compensation for time worked over 40 hours in a workweek, in violation of Section 207(a) of the FLSA. (Id. ¶ 28.) Instead, the City allegedly classified Plaintiffs as employees engaged in "fire protection activities" under 29 U.S.C. §§ 203(y), 207(k) and 29 C.F.R. Part 553.[2] (Id. ¶

---

[1] Plaintiffs Daniel Caldwell, Nathan Manson, and Stacey Nichols were dismissed from this case with prejudice pursuant to stipulation on December 6, 2017. (Doc. No. 25.)

[2] Employees "engaged in fire protection" are exempt from the standard overtime pay requirement of time and a half for all hours worked over forty per week. Haro v. City of Los Angeles, 745 F.3d 1249, 1256 (9th Cir. 2014) (citing 29 U.S.C. 207(k)). Such employees must "work a total of 212 hours during

36.) As a result, until January 2017, the City applied a 28-day work period when calculating Plaintiffs' overtime pay due, rather than paying Plaintiffs overtime pay for time worked over 40 hours in a workweek. (Id. ¶¶ 27-28.)

Plaintiffs initiated this putative class action on May 15, 2017, (Doc. No. 1), and filed the operative, first amended complaint on May 24, 2017, (Doc. No. 7). Without moving for certification of a class or collective action, Plaintiffs entered into settlement negotiations with the City, and on April 26, 2018, Plaintiffs and the City filed a joint motion for approval of settlement. (Doc. No. 33.)

Pursuant to the parties' settlement agreement (the "Settlement Agreement"), the City will pay a total of $307,000 (the "Settlement Fund") in exchange for Plaintiffs' release of all claims "arising from, or attributable to Plaintiffs' claims that the City of San Diego violated the FLSA up to and including the effective date of this Agreement." (Doc. No. 33-2, Settlement Agreement ¶ 4 ("Release of Claims by Plaintiffs").) This release "does not include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiffs' FLSA claims or to any conduct or activity which occurs after the effective date of this Agreement." (Id.) The total settlement amount is allocated as follows: $125,000 for unpaid overtime compensation; $125,000 in liquidated damages; and $57,000 in attorneys' fees and costs. (Id. ¶ 2(a), (b) ("Settlement Terms").) Each Plaintiff will receive the following payment for his or her respective unpaid overtime compensation:

//
//

---

a work period of twenty-eight days before earning overtime compensation." Id. Section 203(y), in turn, defines "employee in fire protection activities" as:
> an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who—
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

| Plaintiff | Settlement Amount |
|---|---|
| Barry Links | $61,319.48 |
| Christopher Sovay | $250.00 |
| Steve Vandewalle | $59,914.73 |
| Andrea Dominguez | $810.90 |
| Timothy Olson | $2,454.89 |
| Brian Sanford | $250.00 |

(Id. Ex. A.)

Furthermore, the $125,000 in liquidated damages will first be issued to the Woodley and McGillivary client trustee account and will then be distributed to each Plaintiff in an amount proportional to his or her unpaid overtime compensation, set forth above. (Id. ¶ 2(b)(ii).) As for attorneys' fees, the law firm Woodley & McGillivary LLP will receive $57,000 for attorneys' fees and costs. (Id. ¶ 2(b)(iii).) No more than 24% of the total settlement fund of $307,000 shall be deducted as payment for attorneys' fees. (Id. ¶ 2(b)(ii).)

## **LEGAL STANDARDS**

Under the FLSA, an employer who violates Section 207 by failing to pay at least one and one-half times an employee's regular rate of pay for hours worked in excess of 40 hours per week is liable to the affected employee for the amount of unpaid overtime compensation, as well as for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Although employees' rights under the FLSA are nonwaivable, an FLSA claim may nonetheless be settled if the settlement is approved by the Secretary of Labor or by a district court. Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citing Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); McKeen-Chaplin v. Franklin Am. Mortg. Co., No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) (same).

The Ninth Circuit has not enumerated criteria that district courts should consider

when determining whether an FLSA settlement warrants approval, but district courts in this Circuit have regularly followed the Eleventh Circuit's holding in Lynn's Food Stores when ruling on motions for FLSA settlement approval. See Dunn v. Teachers Ins. & Annuity Assoc., No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). In Lynn's Food Stores, the Eleventh Circuit held that, when reviewing an FLSA settlement, the district court must determine whether the proposed settlement constitutes a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355. A "bona fide dispute" exists "when there are legitimate questions about the existence and extent of Defendant's FLSA liability"; "[t]here must be some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims," because otherwise the settlement would permit the employer to avoid the full cost of FLSA compliance. Selk, 159 F. Supp. 3d at 1172 (internal quotation marks and citations omitted).

In addition to determining whether a bona fide dispute exists in the case, the district court must also determine whether the settlement is fair and reasonable based on the totality of the circumstances. Id. at 1173. More specifically, the court assesses fairness and reasonableness by considering factors such as "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." Id.

# DISCUSSION

## I. Bona Fide Dispute

The central issue in this case—whether Plaintiffs were employees "engaged in fire protection" and thus exempt from the FLSA's standard 40-hour workweek overtime pay provision—constitutes a bona fide dispute over FLSA provisions. Plaintiffs contend that, as HRMs, they did not have responsibility to engage in fire suppression for purposes of Section 203(y)(1) and, therefore, were not exempt employees. (Doc. No. 33 at 6.) But Defendants maintain that the opposite is true, because four of the six remaining Plaintiffs

worked only on a relief basis as HRMs and were employed on a full-time basis as firefighters. (Id.) Furthermore, the parties dispute whether the two Plaintiffs who worked as full-time HRMs were responsible for fire suppression. (Id.) The parties also disagree about the applicability of Haro v. City of Los Angeles, which held that aeromedical technicians, who provide helicopter support operations and primarily perform medical duties, were employees "engaged in fire protection" for purposes of Section 207(k). (Id. (discussing 45 F.3d at 1257-58).) The scope of overtime-pay exemptions under the FLSA has been subject to debate in a variety of contexts. See, e.g., Navarro v. Encino Motorcars, LLC, 845 F.3d 925, 939 (2017) (holding overtime-pay exemption for automobile "salesm[e]n . . . primarily engaged in . . . servicing automobiles" does not encompass service advisors), rev'd, 138 S. Ct. 1134 (2018). In sum, the Court finds that the disputed issues of FLSA coverage and potential liability here constitute a bona fide dispute. See Selk, 159 F. Supp. 3d at 1172.

## II. Fair and Reasonable Resolution

The Court next considers whether the parties' proposed settlement is fair and reasonable under the FLSA by evaluating the Selk factors. See 159 F. Supp. 3d at 1173. First, the Court finds that the proposed settlement amount bears a reasonable relationship to Plaintiffs' range of possible recovery. See id. at 1174. The parties performed extensive analysis of payroll and time records that the City produced to Plaintiffs. (Doc. No. 33 at 4.) The parties calculated potential damages based on each Plaintiff's particular salary and number of hours worked in excess of 40 hours in a seven-day workweek, while also accounting for overtime paid to each Plaintiff when she or he worked more than 212 hours in a 28-day work period. (Id. at 4, 6.) The parties' calculations also factored in that, as of January 27, 2017, the City has paid HRMs overtime at one and one-half times the regular rate of pay after 40 hours worked in a seven-day workweek. (Id. at 4.) The resulting damages calculations, which are attached to the Settlement Agreement as Exhibit A, represent a significant portion of what Plaintiffs expect to recover if this case were litigated to trial. (Id.) The Court concludes this factor weighs in favor of FLSA settlement approval.

Second, the Court evaluates the stage of proceedings and amount of discovery completed in order "to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." Selk, 159 F. Supp. 3d at 1177. The parties crafted their settlement agreement through an in-person early neutral evaluation conference and three subsequent telephone settlement conferences before the Magistrate Judge. (Doc. No. 33 at 7.) Throughout that time, the parties engaged in good faith settlement discussions and negotiations. (Id.) And as detailed above, the City produced payroll and time records pertaining to each Plaintiff, which the parties utilized to calculate damages. (Id. at 4.) The Court therefore determines that the parties have sufficient information to make an informed settlement decision. See Selk, 159 F. Supp. 3d at 1177 (citation omitted).

The Court similarly finds that the serious risks of ongoing litigation, as well as the views of counsel and participating plaintiffs, favor approval of the Settlement Agreement. The parties dispute key issues in this case and have weighed the likelihood of prevailing on the merits of their respective claims and defenses. (Doc. No. 33 at 4, 7.) The settlement terms, the parties conclude, signify a fair compromise of the Plaintiffs' claims. Indeed, after having the opportunity to review the settlement, including the underlying damages calculations and the proposed award of attorneys' fees and costs, each Plaintiff executed a waiver and release of liability pursuant to the Settlement Agreement. (Doc. No. 33-1, Li Decl. ¶¶ 7-11.) No Plaintiff has objected to the settlement terms, (see id.), and the Court finds no evidence that the settlement resulted from, or was influenced by, fraud or collusion. These considerations weigh in favor of the Court approving the Settlement Agreement.

Finally, the Court considers the scope of the Settlement Agreement's release provision. An FLSA release "should not go beyond the specific FLSA claims at issue in the lawsuit itself." Slezak v. City of Palo Alto, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017). Here, the Court is satisfied that the release is not overbroad. Under the proposed settlement, Plaintiffs release all claims "arising from, or attributable to Plaintiffs' claims that the City of San Diego violated the FLSA up to and including the

1 effective date of this Agreement." (Settlement Agreement ¶ 4.) Importantly, by the Settlement Agreement's terms, this release "does not include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiffs' FLSA claims or to any conduct or activity which occurs after the effective date of this Agreement." (Id.) This limitation narrows the release provision's scope to cover the specific FLSA claims at issue in this lawsuit only. Thus, this factor favors approval of the FLSA settlement.

In conclusion, having carefully considered the totality of the circumstances, the Court finds that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute regarding FLSA liability. See Lynn's Food Stores, 679 F.2d at 1355.

### III. Attorneys' Fees and Costs

The Court also evaluates the reasonableness of the proposed settlement's attorneys' fees provision. Selk, 159 F. Supp. 3d at 1180; see 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). To determine reasonableness, the Court may use either the lodestar method or percentage-of-recovery method. Slezak, 2017 WL 2688224, at *5. Here, Plaintiffs' counsel would receive $57,000 from the Settlement Fund for fees and costs. (Settlement Agreement ¶ 2(b)(iii).) Additionally, the settlement provides that no more than 24% of the total Settlement Fund of $307,000 may be deducted as payment for attorneys' fees. (Id. ¶ 2(b)(ii).) $57,000 constitutes roughly 19% of the Settlement Fund. Considering that 25% is the benchmark for a reasonable fee award in the Ninth Circuit, Selk, 159 F. Supp. 3d at 1180 (citing In re Online DVD-Rental Antitrust Litig.,779 F.3d 934, 949 (9th Cir. 2015)), the Court concludes that the requested attorneys' fees and costs in this case are within the range of reasonableness and may properly be awarded to Plaintiffs' counsel.

//
//
//
//

# CONCLUSION

For the reasons discussed above, the Court **GRANTS** the parties' joint motion for approval of settlement. (Doc. No. 33.) The Court also **APPROVES** an award of $57,000 in attorneys' fees and costs to Plaintiffs' counsel, Woodley & McGillivary LLP, as contemplated in the parties' Settlement Agreement. The parties have represented to the Court that, upon approval of the settlement by relevant City officials and distribution of payments as required by the settlement terms, the parties will jointly move for dismissal of this matter with prejudice. The Court retains jurisdiction over this matter for purposes of enforcing the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: April 30, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT